IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REVENA J. CARROLL,                    §
                                      §
              Plaintiff,              §
                                      §
VS.                                   §    CIVIL ACTION H-10-3108
                                      §
SANDERSON FARMS, INC.                 §
(PROCESSING DIVISION),                §
                                      §
              Defendant.              §

**OPINION AND ORDER**

Pending before the Court in the above referenced cause are (1) Plaintiff Revena J. Carroll's ("Carroll's") motion for judgment under Federal Rule of Civil Procedure 58 (instrument #62, correction #64), including back pay and benefits in the amount of $25,000.00, prejudgment interest in the amount of $3,241.10 when the motion was filed, liquidated damages in the amount of $28,241.10 under 19 U.S.C. § 2617(a)(1)(A)(iii), and attorney's fees in the amount of $153,418.00, for a total judgment of $209,900.20, plus post-judgment interest; and (2) Plaintiff's motion for attorney's fees (#63) in the amount of $153,418 for work through the trial of this action, as well as for  conditional appellate attorney's fees.

Because the attorney's fee request is raised summarily in the first motion and in more depth in the latter, the Court will address it with the more detailed, second motion.

## I.  Plaintiff's FMLA Claim and Judgment

After three days of trial, on July 18, 2013, the fourth day,

the jury returned a verdict in favor of Carroll on her claim that
Defendant Sanderson Farms, Inc. (Processing Division)("Sanderson
Farms") discharged her for taking leave under the Family Medical
Leave Act ("FMLA").   The jury awarded Plaintiff compensatory
damages in the amount of $25,000.00. #74.

**A.   Relevant Law**

The FMLA, 29 U.S.C. § 2615(a) provides,

(a) Interference with rights

> (1) Exercise of rights
>
> It shall be unlawful for any employer to
> interfere with, restrain, or deny the exercise
> of or the attempt to exercise, any right under
> this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to
> discharge or in any other manner discriminate
> against any individual for opposing any
> practice made unlawful by this subchapter.

Regarding § 2615(a), 29 C.F.R. § 825.220 states, "An employer is
prohibited from discriminating against employees or prospective
employees who have taken or used FMLA leave."

Furthermore, 29 U.S.C. § 2617 (a) provides,

Civil action by employees

> (1) Liability
>
> Any employer who violates section 2615 of this
> title shall be liable to any employee
> affected--
>
> > (A) for damages equal to–

(I) the amount of–

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) In a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

(ii) the interest on the amount described in clause (I) calculated at the prevailing rate;

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title provides to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this amount, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (I) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

Title 29 U.S.C. § 260 provides,

In any action commenced prior to or after May 14, 1947 to recover any unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair labor

Standards Act of 1938, as amended [29 U.S.C. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

Liquidated damages under the FMLA are not designed to be punitive, but compensatory, to compensate employees for retention of their pay. *Firth v. Don McGill of West Houston, Ltd.*, No. Civ. A. H-04-0659, 2006 WL 846377, at *1 n.2 (S.D. Tex. Mar. 28, 2006)(liquidated damages provision is not penal in nature but intended to "compensate for the retention of a workman's pay which might result in damages too obscure and difficult for estimate other than by liquidated damages")(*citing Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000)), *aff'd*, 233 Fed. Appx. 346 (5th Cir. 2007).

The FMLA does not define "good faith" for the purpose of avoiding the imposition of liquidated damages under 29 U.S.C. § 2617(a)(iii). *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). The Fifth Circuit has stated that Congress intended to model the enforcement scheme in the FMLA on that in Fair Labor Standards Act ("FLSA") and made relief under the two statutes parallel, so it has turned to the FLSA to interpret the remedial provisions in the FMLA. *Id. See also Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003)("We have held that an

employer 'faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.'"), *citing Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)*, quoting Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).  Thus it determined that in deciding whether to award liquidated damages the trial court must first determine whether the employer has met its burden of proving that it acted in good faith.  *Id.*  As under the FLSA, if the court finds that the employer proved it acted in good faith and reasonably believed that its action was not a violation of the FMLA, the court may reduce the damages award.  *Id*.

To establish good faith, the employer must show his subjective intent was to comply with the statute and that its application of the Act was objectively reasonable.  *Castro v. Chicago Housing Authority*, 360 F.3d 721, 730 (7th Cir. 2004), *cited for that proposition in Firth*, 2006 WL 846377 at *2.  The employer must show that it took "'active steps to ascertain the dictates of the FMLA.'"  *Firth*, 2006 WL 846377 at *2, *citing Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  *See also Dalhiem v. KDFW-TV*, 712 F. Supp. 533, 536 (N.Tex. 1989)(it is the employer's burden, difficult to meet, to prove that "its failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict")(citations omitted).

On appeal, the Fifth Circuit will only reverse the district court's finding of good faith if that finding is clearly erroneous. *Nero*, 167 F.3d at 928.  If it finds that the employer satisfied its burden, the appellate court would then decide if the district court abused its discretion in declining to reduce the damages award. *Id.*  Even if the district court finds that the employer acted in good faith and reasonably, the district court still has the discretion to award liquidated damages in any sum up to the amount allowed by § 216(b).  *Id.*, *citing Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 n.8 (5th Cir. 1990).  The Fifth Circuit, along with other Courts of Appeals, has emphasized, "Doubling of an award is the norm . . . because a plaintiff is awarded liquidated damages in addition to compensation lost.  The district court's discretion to reduce the liquidated damages 'must be exercised consistently with the strong presumption under the statute in favor of doubling.'" *Id.*, *quoting Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998), and *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)("stating in FLSA case that even if BP acted in good faith, '[g]iven IBP's violation of the FLSA, we conclude that the district court did not err in exercising its discretion to award liquidated damages.'").  *In accord, Firth*, 2006 WL 846377, at *1 ("A strong presumption exists in favor of liquidated damages, which effectively results in a doubling of any award of lost wages."); *Thom v. American Standard, Inc.*, 666 F.3d 968, 973 (6th

-6-

Cir. 2012)("There is a strong presumption in favor of awarded liquidated damages that are double the amount of any compensatory damages.   Thus, '[a]lthough in the final analysis we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently *with the strong presumption* under the statute in favor of doubling.'")(emphasis in the original)(citation omitted); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, (8th Cir. 2006)("The district court should exercise its discretion 'consistently with the strong presumption under the statute in favor of doubling.'"), *quoting Shea v. Galaxie*, 152 F.3d at 733 (7th Cir.).

The FMLA requires that reasonable attorney's fees be awarded to a prevailing plaintiff.  29 U.S.C. § 2617(a)(3)("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").

## B.  Plaintiff's Motion for Judgment (#62)

Plaintiff argues that the jury awarded her $25,000 in back pay and benefits denied or lost because it found Sanderson Farms liable for violating the FMLA by discharging her in retaliation for having taken FMLA leave and implicitly rejected Sanderson Farms' contention that its decision to discharge her was based on her poor performance.  *Firth*, 2006 WL 846377 at *2 (jury's finding of FMLA

retaliation is an implicit rejection of the employer's proffered reason for discharge).

Plaintiff seeks liquidated damages equal to the amount of compensatory damages under 29 U.S.C. § 2617(a)(1)(A)(iii), specifically in the amount of $28,241.10 plus pre-judgment interest. Plaintiff maintains that the "mandatory award of liquidated damages should not be reduced" because "[o]ne cannot retaliate against an employee in good faith." #62 at p. 3. *Hite*, 446 F.3d at 869 ("Showing good faith when a jury has determined intentional retaliation is a very high bar to clear, if indeed it can be."). Ted Orman, who made the decision to discharge Carroll, testified that it never crossed his mind that he might be violating the FMLA in doing so. In *Firth*, the court awarded liquidated damages on similar facts. 2006 WL 846377 at *2 ("At trial in the instant matter, Don McGill testified that he did not think about the FMLA requirements before terminating Firth."). Plaintiff further points out that at trial Sanderson Farm did not present any evidence of either good faith or reasonable belief.

Carroll further asserts that prejudgment interest on the amount of damages found by the jury is mandatory, not discretionary. 29 U.S.C. § 2617(a)(ii); *Dotson v. Pfizer*, 558 F.3d 284, 302 (4th Cir. 2009); *Hite*, 446 F.3d at 869; *Nero*, 167 F.3d at

925 n.2.  Carroll represents that the current prime rate is 3.25%,[1] there are 1,456 days between August 24, 2009 (date of Carroll's termination)[2] and August 19, 2013 (the submission date for the instant motion), resulting in prejudgment interest amounting to $3,241.10, with an additional $2.23 each day thereafter until entry of judgment.  The prejudgment interest amount is included in the liquidated damages award.

Carroll also seeks post-judgment interest on the entire judgment (compensatory damages, liquidated damages, and attorney's fees) pursuant to 28 U.S.C. § 1961 (post judgment interest "shall be calculated [daily] from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

---

[1] The FMLA does not set out a specific rate but requires that prejudgment interest on compensatory damages be calculated at "the prevailing rate."  29 U.S.C. § 2617(a)(1)(A)(ii).  The Court observes that 3.25% is the federal prime rate and an appropriate rate for an FMLA case.  *See. e.g., E.E.O.C. v. Service Temps*, No. 3:08-CV-1552-D, 2010 WL 5108733, at *6 (N.D. Tex. Dec. 9, 2010), *aff'd*, 679 F.3d 323 (5th Cir. 2012); *see also Gutierrez v. Grant County*, No. CV-10-48-LRS, 2011 WL 5279017, at *2 (E.D. Wash. Nov. 2, 2011)(applying a 3.25% interest rate from the date of plaintiff's termination to the date of final judgment); *Neel v. Mid-Atlantic of Fairfield, LLC*, No. SAG-10-CV-405, 2012 WL 3264965, at *12 (D.Md. Aug. 9, 2012).  Sanderson Farms has not objected to this rate nor suggested an alternative.  *Id.*  "'Setting the rate of interest on a judgment is within the broad discretion of the district court.'"  *Id., quoting Miles-Hickman v. David Powers Homes, Inc.*, Civ. A. No. H-07-0754, 2009 WL 1797872, at *1 (S.D. Tex. June 24, 2009), *citing United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 630 (5th Cir. 1992).

[2] The court should calculate prejudgment interest on back pay and past damages beginning on the date of the adverse employment action.  *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002).

Treasure yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment").

### C. Sanderson Farms' Response in Opposition (#66)

Sanderson Farms responds that a liquidated damages award is left to the discretion of the district court. Although liability is determined by the jury, the court is granted the power by the statute to determine good faith and reasonableness for purposes of liquidated damages and the employer bears the burden of proving both. Sanderson Farms argues that there is ample evidence in the record to support a finding that it acted in good faith terminating Carroll: the record shows that Sanderson Farms' FMLA and medical leave policy are more generous than required by the statute and that Plaintiff took two periods of medical leave during her employment without question or complaint. Sanderson Farms identified a legitimate, nondiscriminatory reason for terminating Plaintiff, i.e., the repeated negative feedback from employees about her in her role as the Waco plant's Field Employee Relations Manager, the highest ranking human resources official at the Waco, Texas plant. Division Manager of the Waco Processing Plant Todd Ormon testified that he terminated her because of job performance and negative perceptions of how she treated employees, and that neither the FMLA or her medical leaves were in his mind when he made the decision to do so.

-10-

### D.  Carroll's Reply (#68)

Disagreeing that an award of liquidated damages is discretionary, Carroll quotes the language of 29 U.S.C. § 2617(a)(1)(A)(iii) to show that it is mandatory and that a court may only exercise discretion to reduce liquidated damages if the employer establishes that it acted in good faith and with reasonable grounds for believing its conduct did not violate the FMLA: "Any employer who violates section 2615 of this title *shall be liable* . . . for damages equal to . . . an additional amount as liquidated damages . . . ." *Nero*, 167 F.3d at 928-29.

Carroll challenges as meritless and not relevant Sanderson Farms' arguments that its generous FMLA policy and the fact that Carroll was not fired until she took her second medical leave show that it acted in good faith.  Moreover and significantly, the jury rejected Sanderson Farms' arguments.  The jury was specifically instructed that Plaintiff had to prove by a preponderance of the evidence that "she was discharged in retaliation for taking leave" and that "but for her taking Family Medical Leave Act leave, Sanderson [Farms] would not have terminated her employment when they did."  In an FMLA suit, when legal and equitable issues are decided in the same case and depend on common determinations of fact, the questions of fact are submitted to the jury, and the court in resolving the equitable issues is bound by the jury's finding.  *Arban v. W. Pub. Corp.*, 345 F.3d 390, 408 (6th Cir.

-11-

2003)(finding abuse of discretion in court's denial of liquidated damages where its finding that defendant acted in good faith in firing plaintiff was contrary to jury's factual determinations that defendant knowingly retaliated against defendant; "When legal and equitable issues to be decided in the same case depend on common determinations of fact, such questions of fact are submitted to the jury, and the court in resolving the equitable issues is then bound by the jury's findings on them."), *citing Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965 (10th Cir. 2002), *citing Beaver Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962).[3]

---

[3] *In accord, Hometown Folks, LLC v. S&B Wilson, Inc.*, No. 1:06-cv-81, 2008 WL 918519, at *4 (E.D. Tenn. Apr. 3, 2008), *aff'd*, 643 F.3d 520 (6th Cir. 2011); *Case v. Graduate Medical Educ. Inc.*, No. 1:09-cv-897, 2010 WL 1744888, at *1 (W.D. Mich. Apr. 28, 2010). The Tenth Circuit explained in *Ag. Servs. of America, Inc. v. Nielsen*, 231 F.3d 727, 730 (10th Cir. 2000),

> "The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must first be tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues. Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims."

*Diffee Ford*, 298 F.3d at 965, *quoting Ag. Servs. of America*, 231 F.3d at 730, and *Brinkman v. Dep't of Corrections*, 21 F.3d 370, 372-73 (10th Cir.)("'We have held that when fact issues central to a claim are decided by a jury upon evidence that would justify its conclusion, the Seventh Amendment right to a jury trial

### E.  Court's Decision

The Court agrees with Plaintiff that pursuant to the jury's verdict she is entitled to compensatory damages of $25,000.00, and, because Sanderson Farms has not submitted any evidence since the trial to demonstrate that it acted in good faith and had reasonable grounds for its discharge of Carroll, she is entitled to liquidated damages equal to the compensatory damages plus prejudgment interest.  The Court agrees that the jury's verdict implies that it rejected Sanderson Farms' explanation that it discharged Carroll because of her poor performance and numerous negative comments from employees.  Much of the circumstantial evidence presented by Plaintiff can be interpreted, as it was by the jury, to question Sanderson's articulated reason for firing her and to show that Sanderson Farms acted in bad faith and unreasonably.  Examples include the fact that there was not a single document in Carroll's personal file to show that she was ever counseled or disciplined for hourly employee complaints about her or that she had any problems with hourly employees; the timing of her discharge on the day of returning from her medical leave of absence for only a week[4]; Ormon's claim that he had arranged for a performance

---

prohibits the district court from reaching a contrary conclusion.'"), *cert denied*, 513 U.S. 927 (1994).

[4] Carroll took her first leave of absence for knee surgery on July 28, 2009, and returned to work on August 12, 2009.  When her knee swelled up, she took her second leave of absence on August 18, 2009 and returned to work on August 24, 2009, when she was

improvement plan for Carroll but canceled it before plaintiff was even informed of the employee complaints against her purportedly made at the May 2009 anti-union training session and she was never given an opportunity to respond to them; Director of Organization Development and Corporate Communications Robin Robinson's deposition testimony that individual performance improvement plans are time consuming and expensive for Sanderson Farms and are not provided for employees in trouble or to be terminated; testimony that Ormon made angry comments and exhibited negative conduct each time the issue of Carroll's FMLA leave came up; and the absence of any evidence that Plaintiff had previously taken excessive leave or was excessively absent.   Plaintiff is entitled to liquidated damages since Sanderson Farms has failed to meet its substantial burden to show that it acted in good faith and reasonably.

**II.  Plaintiffs' Application for Attorney's Fees (#63)**

Plaintiff requests an award of attorney fees in the amount of $153,418.

**A.  Relevant Law**

The FMLA mandates that "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action" be awarded to a prevailing plaintiff.  29 U.S.C. § 2617(a)(3).  While an award of fees under the FMLA is nondiscretionary, the court has the discretion to determine the amount of the fee.  *Jordan v. USPS*,

---

discharged.

379 F.3d 1196, 1277 (10th Cir. 2004); *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 303 (4th Cir. 2009). A plaintiff is a "prevailing party" when she "'succeed[]s on any significant issue in litigation that achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978), *overruled in part on other grounds as explained by Richardson v. Miller*, 279 F.3d 1, 4 (1st Cir. 2002). Carroll is a prevailing party in that she obtained a judgment in her favor on her retaliation claim for taking FMLA leave under the FMLA, ADA, and TCHRA. Counsel bears the burden of showing the reasonableness of his fee request and that he exercised billing judgment. *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

"That the plaintiff is a 'prevailing party' . . . may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436. Where a plaintiff is only partially successful on her claims, the court must consider whether the unsuccessful claims were related to the successful claims, i.e., whether they were based on the same facts or legal theories, in other words, "inextricably related.". *Hensley*, 461 U.S. at 434. Where the plaintiff is unsuccessful on some of her claims and where the unsuccessful ones have different legal theories and the time spent on them related only to those unsuccessful ones, a reduction in the

fee amount is required.  *Bertrand v. City of Lake Charles*, No. 2:10-CV-867, 2013 WL 1790089, at *3-4 (W.D. La. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1789713 (W.D. La. May 3, 2012).  *See also McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 640 (4th Cir. 1998)("Even when an award of attorneys' fees is mandatory, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success.").

The Supreme Court has acknowledged that "there is no certain method of determining when claims are 'related' or 'unrelated,'" and counsel need not "record in detail how each minute of his time was expended . . . [b]ut at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.  Moreover, "''even where a plaintiff's claims were interrelated, nonfrivolous, and raised in good faith,''" the hourly rate requested may be an excessive amount. *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 801 (5th Cir. 2006), *quoting Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998), *quoting Hensley*, 461 U.S. at 436.  "'When the documentation of hours is inadequate for the court to identify those hours spent on prevailing claims which are separate and distinct from other claims, the court may reduce the fee award accordingly." *Bertrand*, 2013 WL 1790089 at *4, *quoting Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).  *In accord, Parton v. GTE North, Inc.*, 971 F.2d

150, 156 (8th Cir. 1992)("A district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," a sum commonly called the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  There is a strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an upward adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee. *Walker v. Dept. of HUD*, 99 F.3d 761, 771 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert denied*, 516 U.S. 862 (1995).

A reasonable hourly rate is that rate in the community for such legal services rendered by attorneys of comparable skill, experience, and reputation.  *Alberti v. Klevenhagen*, 896 F.2d 927, 936*, vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990); *Heidtman v. County of El Paso*, 171 F.3d 1039, 1043 (5th Cir. 1999). A reasonable hourly rate should be in accord with rates "prevailing

in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).   "While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.'" *Coleman v. Houston Independent School District*, 202 F.3d 264 (5th Cir. 1999)(Table)(available on Westlaw), *citing Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000).   Furthermore, the relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).   The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant community. *Condon v. Hunting Energy Services, L.P.*, Civ. A. No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006).   Usually the fee applicant establishes the community's reasonable rate through the affidavits of other attorneys of similar caliber practicing there. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir. 1993).

In addition to the community rate, the district court must also consider the attorneys' regular rates. *Louisiana Power &*

*Light Co.*, 50 F.3d at 328.  Generally when an attorney's requested hourly rate is his customary rate, when it is within the range of prevailing market rates, and when the rate is not contested, it is viewed as *prima facie* reasonable.   *Id.*, 50 F.3d at 329.   To establish the reasonableness of his requested rate, the fee applicant should produce satisfactory evidence beyond his own affidavit "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 896 n.11.  Furthermore, the court may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees.  *Davis v. Bd. of Sch. Comm'rs of Mobil County*, 526 F.2d 865, 868 (5th Cir. 1976).

The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon*, 2006 WL 2882857, at *2, *citing Louisiana Power & Light Co.*, 50 F.3d at 329.  The fee applicant bears the burden of showing that the hours claimed were reasonably expended.  *Hensley*, 461 U.S. at 437.  Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not.  *Hensley*, 461 U.S. at 434; *Louisiana  Power & Light*, 50 F.3d at 324.

The fee applicant should exercise "billing judgment" and keep billing time records in a way that enables the reviewing court can "identify distinct claims." *Hensley*, 461 U.S. at 437. *See also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)*(An applicant for fees must submit documentation, e.g., contemporaneous billing records or detailed invoices or affidavits, to permit the court to identify noncompensable hours and to determine an appropriate amount of fees.).* Counsel must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Id.* *See also Saizan v. Delta Concrete Products Company*, 448 F.3d 795, 799 (5th Cir. 2006)("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. [footnotes omitted]"). *See also Louisiana Power*, 50 F.3d at 324-25 ("[T]he documentation must be sufficient for the court to verify that the applicant has met its burden. . . . [A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*. . . . Failing

to provide contemporaneous billing statements does not preclude an award of fees per se as long as the evidence produced is adequate to determine reasonable hours."); *Saizan*, 488 F.3d at 799, 800 (billing judgment requires documentation of the hours charged and of the hours written off as duplicative, unproductive or excessive; finding the district court did not commit clear error in finding a failure to produce evidence of billing judgment nor abuse its discretion by imposing a ten percent reduction in the lodestar because of that failure). "Litigants take their chances when submitting fee applications" without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents. *Louisiana Power*, 50 F.3d at 327. The "'contemporaneously created time records [should] specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Hilton v. Executive Self Storage Associates*, Civ. A. No. H-06-2744, 2009 WL 1750121 at *10 (S.D. Tex. June 18, 2009), *quoting Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). When there is no evidence of billing judgment, the appropriate remedy is to reduce the hours awarded by a percentage intended to replace the exercise of billing judgment. *Walker v. U.S. Dep't of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996), *citing Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987)(reducing award by 13%) *See also Saizan*, 448 F.3d at

799-800 & n.25 (affirming district court's 10% reduction for lack of evidence of billing judgment); *Hopwood*, 236 F.3d at 279 (25% reduction for lack of billing judgment and vague and duplicative work); *Johnson-Richardson v. Tangipahoa Parish School Bd.*, Civ. A. No. 12-0140, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013)(30% reduction for block billing[5]), *citing Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010)(citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 Fed. Appx. 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012).

In determining what is a reasonable fee, the courts in the Fifth Circuit must consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

---

[5] "'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *4 (N.D. Feb. 11. 2011), *quoting Glass v. U.S.*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004). *See also Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 864-65 (S.D. Tex. 2011)(A block-billed entry "lists the tasks performed during that period, giving some detail about the kinds of work performed on a particular day, but does not itemize the amount of time spent on each.").   Block billing can impede the court's ability to determine whether the amount of time spent on the different tasks is reasonable and some courts have reduced the hours block billed across the board. *Davis v. Perry*, ___ F. Supp. 2d ___, Nos. SA-11-CA-788-OLG, etc., 2014 WL 106990, at *19 (W.D. Tex. Jan. 8, 2014); *Miller v. Raytheon Co.*, 2013 WL 6838302, at *10 (N.D. Tex. Dec. 27, 2013)(and cases cited therein).   A reduction for block billing is not automatic.   *Id.; id.*

*abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989)(holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

While the lodestar is relevant to determining a fee award, it is not the sole basis for determining that award; the *Johnson* factors are applicable to deciding whether the lodestar is reasonable, as well as to adjusting that award by a multiplier once the lodestar is calculated. *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir. 1986)("The time and hours spent on a case are a necessary ingredient in determining a fee award, but they should not be the sole basis for determining a fee. The *Johnson* factors govern the determination of reasonableness itself; they are not merely factors to be considered in adjusting the award

-23-

once the lodestar is calculated."), *citing Johnson v. Georgia Highway Express*, 488 F.2d at 717.

As noted, based on one or more *Johnson* factors, the court may apply a multiplier to adjust the lodestar up or down if that factor or factors are not already taken into account by the lodestar, itself. *Strong*, 137 F.3d at 850. An adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar. *In re Fender*, 12 F.3d 480, 487 (5th Cir.), *cert. denied*, 511 U.S. 1143 (1994); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.)("[T]he district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."), *cert. denied*, 510 U.S. 991 (1993).

Four of the *Johnson* factors are presumably included in the lodestar calculation: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984); *Shipes*, 987 F.2d at 320.[6]

---

[6] For example, in *Shipes*, the Fifth Circuit reviewed a district court's enhancement of the "lodestar amount based on the novelty and difficulty of the case because it found that there were over three hundred plaintiffs, an entire spectrum of employment decisions was being challenged, the case was complex and highly technical, and Trinity's obstinate conduct caused additional difficulties." 987 F.2d at 321. The panel opined,

These factors--not so uncommon in much present-day litigation--simply do not render a case "rare" or "exceptional" for purposes of enhancing the lodestar

"Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts." *Id.*; see also *Walker*, 99 F.3d at 771, *citing Alberti v. Klevenhagen*, 896 F.2d 927, 936 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 564-65 (1986))(*quoting Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 323-24 (W.D. Tex. 2007).  The Fifth Circuit has also held that two other factors, time limitations imposed by the client or the circumstances and preclusion of other employment, are generally subsumed in the lodestar calculation, too.  *Shipes*, 987 F.3d at 321-22; *Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).  Increasing the fee award based on the eighth factor (the amount involved and the results obtained) is only proper when the applicant shows that "it is customary in the area for attorneys to

---

> amount.  All counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate, based on fees for counsel of similar experience and ability.  Still further, the difficulty in the handling of the case is adequately reflected in the number of hours billed--hours for which the attorney is compensated in the lodestar amount.  Similarly, obstinate conduct by opposite counsel is compensated by the additional number of hours that are required to prevail over such obstinacy.

*Id.*

charge an additional fee above their hourly rates for an exceptional result . . . ." *Shipes,* 987 F.2d at 322. The *Shipes* panel did state that "enhancement due to the results obtained may be warranted." *Id.* at 321.

To enhance a lodestar, the court "'must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.'" *Id., quoting Shipes,* 987 F.2d at 320. "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998), *citing Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990); *Saizan v. Delta Concrete Products Co.*, 448 F.3d at 799.

"The most critical factor in determining an attorney's fee award is the 'degree of success obtained.'" *Singer v. City of Waco, Texas*, 324 F.3d 1038, 829 (5th Cir, 2003), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Saizan*, 448 F.3d at 800 & n.19. "This factor is particularly crucial when, as in this case, a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims." *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998), *citing Hensley*, 461 U.S. at 434.

In 7B *Federal Practice & Procedure Civ. 3d* § 1803.1 (Database current through 2008), in discussing what factors may be taken into account to adjust a lodestar, Charles Alan Wright also identified as the most significant one the benefit (monetary or otherwise) conferred.  Wright further observed,

> In addition to the benefit conferred, the district court should make a qualitative appraisal of the petitioning lawyer's professional services under each of the categories of work reflected in the time records.  This might include the following series of inquiries, First, to what extent do the petitioning attorney's credentials and legal experience mark the attorney as someone above the qualitative medium of those of comparable age practicing in the community?  Second, what was the quality of the work the attorney actually performed in the case?  Third, how efficient was the petitioning attorney in processing the lawsuit?  This factor can only be considered by a careful examination of the novelty of the issues presented by the matter and the lawsuit's overall complexity. . . . Fourth, what responsibility did the petitioning attorney assume in the development and management of the case?  . . . . All of these factors should help the court in evaluating the quality of the representation.

*Id.*

Furthermore, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.  The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams,* 805 F.2d at 535.  "[H]ours . . . spent in the passive role of an observer while other attorneys perform" are usually not billable. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982), *quoted in Coleman*, 202 F.3d at 264 (Table;

available on Westlaw).

The hourly rate for attorneys should not be applied to clerical, secretarial or administrative work, since these are part of office overhead. *Reyes v. Spur Discount Store No. 4*, Civ. A. No. 07-2717, 2007 WL 2571905, *3 & nn.19-20 (E.D. La. Aug. 31, 2007); *Abrams*, 805 F.2d at 536 (court should consider whether the work performed was "'legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer."), *quoting Johnson v. Georgia Highway Express*, 488 F.2d at 717. "[I]nvestigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available . . . may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id.* at 535. Work by paralegals may only be recovered to the extent that it is similar to that typically performed by attorneys; otherwise it is an unrecoverable overhead expense. *Coleman*, 202 F.3d 264, *citing Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982).

Where the award of attorney's fees is disproportionate to the amount of damages awarded, that difference by itself does not require a reduction of fees. Proportionality is a factor that may be considered in deciding the reasonableness of a fee request, but proportionality is not necessarily required. *City of Riverside v.*

-28-

*Rivera*, 477 U.S. 561 (1986); *Hensley*, 461 U.S. at 436 ("There is no precise rule or formula" for determining the reasonableness of the relation between the fee requested and the relief obtained); *Saizan*, 448 F.3d at 802-03 ("It remains true that there is no *per se* proportionality rule.   However the District Court had ample reason to reduce the fee award, not relying solely on the low settlement amount but also on Plaintiffs' failure to establish billing judgment and inability to prove any element of the case."). *Hernandez v. Hill Country Telephone Co-op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988)("There is no per se requirement of proportionality in an award of attorney fees under 42 U.S.C. § 1988.); *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 663 (5th Cir. 2002)("The amount of damages a plaintiff recovers is only one of many factors that a court must consider when calculating an award of attorneys' fees.   An attorney's fee award does not need to be commensurate with the actual amount of dollars awarded to the plaintiff."), *overruled on other grounds, Burlington N. v. Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

Nevertheless the Fifth Circuit has held that in awarding fees the district court must "give primary consideration to the amount of damages awarded as compared to the amount sought," particularly where the amount of recovery and the amount of attorney's fee awarded are substantially out of proportion.  *Migis*, 135 F.3d at 1048 (reversing a fee award where plaintiff originally sought

$325,000 in compensatory damages, which was more than twenty-six times the $12,233.32 in damages actually awarded by the jury), *citing Farrar v. Hobby*, 506 U.S. 103, 114 (1992)("Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."), *quoting City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986)(Powell, J., concurring).   In *Migis* the Fifth Circuit panel held that "the district court abused it discretion by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought."  135 F.3d at 1048.

While the FMLA allows a prevailing plaintiff to recover reasonable costs, Federal Rule of Civil Procedure 54(d) "'creates a presumption in favor of awarding costs." *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 390 (7th Cir, 1983).  The costs permitted in an FMLA action are basically the same as for taxable items for a bill of costs under 28 U.S.C. § 1920.  *Alcazar-Anselmo v. City of Chicago*, 2011 WL 3236024, at *8 (N.D. Ill. July 27, 2011), *citing Vaccaro v. Custom Sounds, Inc.*, No. 3:08-CV-776, 2010 WL 1223907, at *6 (M.D. Fla. Mar. 4, 2010)(award costs under the FLSA using a similar analysis to that used in a motion under § 1920).  The Court must decide if the requested costs are reasonable and necessary.  *Id.*

### B.  Plaintiff's Application for Fees

Plaintiff's counsel, G. Scott Fiddler, states that he was employed on a contingency fee basis and has thus far not been paid anything for his work, but he also provides the information for a calculating a lodestar.  In an affidavit, Ex. 1 to #63, he describes the contingency fee agreement under which he has represented Plaintiff since December 1, 2009:  if the case settled before counsel filed her suit, he would recover 33.3%; if collection or settlement occurred after the suit was filed, the fee would be 40%; and after notice of appeal, the fee would be 45%. #63, Ex. 1, Affid. of G. Scott Fiddler.

This Court concludes that because the United States Supreme Court has rejected contingency enhancement awards in fee-shifting awards and characterized the lodestar analysis as "the guiding light of our fee-shifting jurisprudence," and that there is a "strong presumption that the lodestar represents the reasonable fee," this Court will apply that method here.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)(ruling out contingency enhancements to the lodestar); *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 551 (2010)( the loadstar approach has "'achieved dominance in the federal courts.'").[7]  The Fifth Circuit has opined

---

[7] The Supreme Court has made clear that a plaintiff may contract freely with her attorney to pay an additional contingency fee while seeking a lodestar award under the fee-shifting statute.  *Giesbrecht v. Barnhart*, 535 U.S. 789, 806 (2002)("nothing prevents the attorney for the prevailing party

that while a contingent-fee arrangement

> does not automatically limit the fee award, . . . '[t]he
> presence of a pre-existing fee arrangement may aid in
> determining *reasonableness* [because][t]he fee quoted to
> the client or the percentage of recovery agreed to is
> helpful in demonstrating the attorney's fee expectation
> when he accepted the case.   Although the contingent
> nature of the fee arrangement may be considered in
> determining whether to reduce the lodestar, a lodestar
> *enhancement* cannot be based on that factor.

*Migis*, 135 F.3d at 1057, *citing Blanchard v. Bergeron*, 489 U.S. 87,

92 (1989), and *Dague*, 505 U.S. at 567.

Plaintiff's counsel seeks fees for his own services (at a

billing rate of $375.00 per hour), his associate Andrew W. Reed's

(currently $150.00 per hour as an associate from August 2010,

previously $75.00 per hour as a law clerk from June 2009-May 2010),

and his paralegal or legal assistant E. Denise Chatham's ($125.00

per hour).   He claims that these fees are reasonable, even low,

based on *Texas Lawyer*'s most recent survey of hourly rates in

Houston, Texas.

To explain his request for a fee award of $153,418, counsel

attaches his own affidavit (Ex. 1), a resume (Ex. A), an article on

*Texas Lawyer*'s fee survey (Ex. B), his billing records (Ex. C) for

---

from gaining additional fees, pursuant to contract, from his own
client"); *Vanegas v. Mitchell*, 495 U.S. 82, 86-89(1990)("[T]here
is nothing in [§ 1988] to regulate what plaintiffs may or may not
promise to pay their attorneys if they lose of if they win";
"[w]e have . . . accepted, at least implicitly, that statutory
awards of fees can coexist with private fee arrangements. . .
[J]ust as we have recognized that it is the party's entitlement
to receive the fees in the appropriate case, so we have
recognized that as far as § 1988 is concerned, it is the party's
right to waive, settle, or negotiate that eligibility.").

work up to the date of the filing of his fee application, amounting to $130,043, and a Declaration from Houston attorney Peter Costea (Ex.2) stating that the fees requested are reasonable given the qualifications of Fiddler, Reed and Chatham.  Ex. 1, Fiddler Aff., p. 3, ¶ 11; Ex. C.  Fiddler states,

> To date, the bill reflects $130,042.50 in reasonable and necessary attorney's fees (including paralegal and law clerk fees), using the lodestar method.  In my opinion, Plaintiff will likely file a reply to Defendant's response to this application and will file a response to the post-trial motion filed by Defendant.  [#1, Fiddler Affid., p. 4, ¶ 12.]  Therefore Plaintiff will reasonably incur the following additional fees for work until the filing, if any, of a notice of appeal, totaling $23,375:

> G. Scott Fiddler (Attorney)    $375.00/hr. [x]  30 hrs. = $11,250

> Andrew W. Reed (Associate)    $150.00/hr. [x]  60 hrs. = $9,000

> E. Denise Chatham (Legal Ass.) $125.00/hr. [x]  25 hrs. = $3,125

#63 at p.6; Fiddler Aff., p.4, ¶ 12.  He does not seek an upward adjustment from the lodestar amount and contends that no downward adjustment is warranted.

Without explaining why, counsel concedes that he did not drop his claims against Defendants Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division) and Sanderson Farms, Inc. (Food Division) until the morning of trial, but maintains that those claims were based on the same common core of facts and legal theories as Plaintiff's FMLA retaliation claims against Defendant Sanderson Farms, Inc. (Processing Division), as evidenced by the

-33-

fact that the initial set of discovery requests for all three was the same.  Fiddler Aff., p. 4, ¶ 13.  He also asserts that the work performed in this case for claims of discrimination under the ADA and the TCHRA "were so intertwined with the work on the claim for retaliation under the FMLA that it is not practical to attempt to separate them."  #63 at p.7.  As examples he states that the work to establish that Carroll was "disabled" under the ADA and TCHRA was the same as establishing that she suffered from a "serious medical condition" under the FMLA.  He further states that Plaintiff's FMLA retaliation claim was based on the same core of facts and legal theories as Plaintiff's ADA and TCHRA claims and that it would be "difficult, if not impossible to divide them on a claim-by-claim basis."  *Id.;* Ex. 1 at p. 4.  He also claims, without any supporting facts or documents or specificity, "The time spent on pleading and motion matters pertaining strictly to non-FMLA and related causes of action and any work relating exclusively to defamation, tortious interference, and/or to the dismissed defendants is essentially de minimis and is more than offset by the time I and my staff worked on the case and never billed," and he estimates "that lost time to be at least 22 hours."  Ex. 1 at p.4.  Counsel further maintains, "Because of the intricacies of employment discrimination law, including United States Supreme Court opinions issued in June 2013 in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ____ U.S. ____, 33 S. Ct. 2517 (2013)[*sic*], this case

-34-

required more skill than the ordinary wrongful discharge case."

*Id.* at 5.[8]

---

[8] Not only did counsel incorrectly cite this case (it should be 133 S. Ct. 2517), issued on June 24, 2013, but it is a Title VII suit in which a physician of Middle Eastern descent alleged that a state university with which his hospital was affiliated revoked a job offer because he complained that he was racially and religiously harassed by a superior. 133 S. Ct. at 2524. Below, the Fifth Circuit had denied the defendant's motion for summary judgment on the grounds that a reasonable jury could find that the plaintiff's protected activity was a "motivating factor" for the adverse action. 133 S. St. at 2524. Reversing the appellate court, the Supreme Court held that a plaintiff must prove "but-for" causation (i.e., the plaintiff's injury would not have occurred in the absence of the alleged wrongful action of the employer), and not merely that retaliation was a substantial or motivating factor, for a Title VII or ADA retaliation claim.

*Nassar* was issued less than a month before Carroll's trial. The Fifth Circuit has since stated that it has not yet decided whether *Nassar* applies to FMLA-retaliation claims. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389-90 (5th Cir. 2013). Moreover, even if it applies to an FMLA retaliation claim, it should not have caused counsel increased work and challenge, nor does it warrant increased fees. The Fifth Circuit has always distinguished between the standard used for a *prima facie* case of retaliation or on summary judgment, which requires only the less stringent standard, and that at trial; it has always required "but-for" standard for a jury verdict, so counsel's argument is not persuasive. *See, e.g., Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)(on *prima facie* case); *Kanida v. Gulf Coast Medical Personnel, LP*, 363 F.3d 568, 580 (5th Cir. 2004)("This Court has repeatedly stated that in retaliation cases the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity.'"), *citing Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001)("For retaliation claims this final burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred 'but for' the protected activity."); *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332-33 (5th Cir. 2005)(applying mixed motive framework on summary judgment); *Johnson County Southwestern Institute of Forensic Science*, Civ. A. No. 3:12-CV-1461-D, 2014 WL 177284, at *7 (N.D. Tex. Jan. 16, 2014)("As to the third element [of a prima facie case of retaliation under Title VII], the requirement that a plaintiff show at the prima facie case stage a 'causal link' between a

In addition counsel seeks a conditional award of attorney's fees in the event of an appeal: (1) prevailing in appeal, $75,000; (2) prevailing in petition for certiorari to the Supreme Court, $20,000; and (3) prevailing in appeal before the Supreme Court, $75,000.

## C.  Sanderson Farms' Objections (#67)

Sanderson Farms highlights the fact that counsel has failed to exercise billing judgment.  Moreover, the invoices he submitted are largely block-billed, obstructing the Court's ability to accurately discount hours that were unreasonably billed.

Sanderson Farms also questions Fiddler's hourly rate and states that the State Bar of Texas publishes an "Hourly Rate Fact

---

protected activity and an adverse employment action is 'much less stringent' than the 'but for' causation that a jury must find."); *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)("The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but-for' cause of the adverse employment decision.").

Carroll's FMLA retaliation claim went to trial before a jury, and the proper "but-for" standard applied, as reflected in the jury charge, which expressly stated (#73 at p. 5),

> To prevail in this case Ms. Carroll must prove by a preponderance of the evidence that:
>
> a.  She took Family Medical Leave Act leave; and,
>
> b.  She was discharged in retaliation for taking leave.
>
> Ms. Carroll must prove that but for her taking Family Medical Leave Act leave Sanderson would not have terminated her employment when they did.

Sheet," relied upon by attorneys and courts in Texas: http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_ EconomicTrends&Template=/CM/ContentDisplay.cfm&ContentID=20499 (last visited August 5, 2013). #67, Ex. 1, Declaration of Mark R. Flora, one of Sanderson Farm's attorneys. It shows that a reasonable hourly rate for attorneys with Scott Fiddler's years of experience practicing employment law in small Houston firms is $275. In his application, Mr. Fiddler relies on *Texas Lawyer*'s rate survey's[9] average hourly rate for an "equity partner" in Houston of $388/hour. The magazine does not break down the average rate by practice areas, but includes more lucrative areas of legal practice such as mergers and acquisitions, antitrust, taxation, and intellectual property; it therefor does not represent the community's rate for employment law services as required by *Blum*, 465 U.S. at 896 n.11. It also does not distinguish rates based on firm size; courts recognize that rates at larger firms tend to be higher than those at smaller firms. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989)(Case law does not compel "district courts to assign the same hourly rate to every law firm in the city . . . . [S]everal market rates may prevail in a given area."); *Wilcox v. Sisson*, No. Civ. A. 02-1455(RMC), 2006 WL 1443981, at *2 (D.D.C. May 25, 2006)("The market generally accepts higher rates from attorneys at firms with more

---

[9] #63-1, Ex. B.

than 100 lawyers than those at smaller firms--presumably because of their greater resources and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services."); *Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 236 (E.D.N.Y. 2005)(noting that hourly rates tend to be higher at larger firms to compensate for higher overhead costs).

Finally, the key factor in a fee award is the degree of success obtained by the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In *Hensley*, the Supreme Court opined, if

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436.  The Fifth Circuit requires the district court to consider "whether the plaintiff failed on alternative claims and whether the award is excessive in light of the plaintiff's overall level of success." *Romaguera v. Gergenheimer*, 162 F.3d 893, 896 (5th Cir. 1998). *See also Migis*, 135 F.3d at 1047 ("'[T]he most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.'").

In *Migis* the fees awarded were more than 6.5 times the amount of damages awarded, which the Fifth Circuit found to be

unreasonable.  It reversed and remanded, ruling, "Regardless of the effort and ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand.  We hold that the district court abused its discretion by failing to give adequate consideration to the results obtained relative to the fee award and the result obtained relative to the results sought."  *Id.* *See also Jason D.W. v. Houston I.S.D.*, 158 F.3d 205 (5th Cir. 1998)(*per curiam*)(where plaintiff prevailed on three of nineteen issues, but did not prevail on an issue upon which the parties spent over 50% of their time, the Fifth Circuit affirmed the district court's reduction of fees by 75%); *Dodge v. Hunt Petrol Corp.*, 174 F. Supp. 2d 505 (N.D. Tex. 2001)(where plaintiff prevailed on one of two claims, court reduced fee request by 75%); *Hilton v. Executive Self Storage Assoc., Inc.*, Civ. A. H-06-2744, 2009 WL 1750121, at *14-16 (S.D. Tex. June 18, 2009)(court reduced fees by 67% for limited success in an FLSA case).  Sanderson Farms argues that counsel's fees must be adjusted substantially downward given his limited success.

Sanderson Farms points out that Plaintiff's Amended Complaint asserted six causes of action (FMLA interference, FMLA retaliation, ADA discrimination, TCHRA discrimination, defamation, and tortious interference), but she prevailed only on one, the FMLA retaliation claim.  She also sought between $109,180 and $474,068.32 in lost

wages and benefits,[10] approximately $300,000 in non-economic compensatory damages, and at least $300,000 in punitive damages, for a total amount between $709,280 and $1,074,068.32. The jury awarded her only $25,000, just 2.3% to 3.5% of the total amount that she sought. In other words, Carroll sought over twenty-eight times the damages actually awarded to her. Furthermore Plaintiff

---

[10] Carroll objects that while she sought that amount in the First Supplemental Initial Disclosures, filed on February 17, 2011 when she was at a job earning substantially less that she did at Sanderson Farms and included $398,199 in potential front pay damages, when she began earning more prior to trial she amended her disclosure and indicated that she was not seeking front pay damages. #69 at pp. 7-8. Sanderson Farms argued from her disclosures that she is seeking $300,000 in non-economic compensatory damages and $300,000 in punitive damages, for a total of $600,000 (coming up with the figure of $1,074,068, when Sanderson Farms' attorneys knew that under the damage caps applicable to the ADA and TCHRA, the maximum amount a plaintiff can recover for compensatory and punitive damages combined is $300,000. 42 U.S.C. § 1981a; Tex. Labor Code § 21.2585.

Plaintiff further argues that she demanded $50,000 to settle the case on November 16, 2011, also indicating that attorney's fees at that time amounted to $30,000, but warning that by the time of trial they might amount to $150,000. Sanderson Farms did not offer anything. In the spring of 2012 she again tried to settle the case, this time for $97,500, but Sanderson Farms did not offer anything. She complains, "Now having refused to even respond to any offer and forced Carroll's attorneys to incur more than $150,000 in fees, Sanderson Farms has the audacity to ask the district court to award only $36,850, claiming, unbelievably, that Carroll has not been successful in light of what she sought." #69 at p.8.

The Court would remind Plaintiff that Sanderson Farms had the right to refuse to settle if it believed her claims lacked merit. The fact that only one of her claims survived until trial indicates Defendant was not completely wrong. Moreover, Plaintiff cites no authority, and the Court knows of none, that considers a refusal to settle to be a factor for consideration in determining an award of attorney's fees to a prevailing plaintiff.

requests fees in an amount about 6.14 times the size of the jury award.  The Fifth Circuit struck down similar ratios in *Migis* and reduced the award where the plaintiff "sought over twenty-six times the damages actually awarded" and the "attorney's fee award was over six and one-half times the amount of damages awarded."  135 F.3d at 1048.[11]  Although the district court in *Migis* had reduced the lodestar amount that it calculated by ten percent based on the results it achieved, the Fifth Circuit found that it did not give sufficient consideration to the "degree of [monetary] success obtained," that the "ratios are simply too large to allow the fee award to stand."  The panel reversed the district court's fee award and remanded the issue.  135 F.3d at 1048.  In the instant case, Sanderson Farms suggests a 50% reduction of the lodestar amount as appropriate.

Sanderson Farms also objects to counsel's failure to exercise billing judgment and distinguish hours that are insufficiently described, duplicative, clerical, and block-billed, notes the lack of documentation that it did so, and urges the court to look for duplication of effort, improper use of the lawyer's time, and differentiation of legal work traditionally performed by attorneys

---

[11] The *Migis* panel made clear that prejudgment and post-judgment interest are not subject to the same analysis because "[t]he award of interest is automatic and bears no relation to the effort or skill of the attorneys or any other *Johnson* factor. It merely adjusts the damage award to reflect the time value of money."  135 F.3d at 1048 n.6.

and clerical work.  It points out that Fiddler's affidavit does not show that he or any other attorney exercised billing judgment regarding the Application for Attorney's Fees.  Nor do the invoices demonstrate the exercise of billing judgment in their use of vague descriptions in entries such as "trial preparation" or "prepare for deposition," which appear a number of times in the invoices submitted.  *Louisiana Power & Light Co.*, 50 F.3d at 326 ("The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review," e.g., citing cases that have done so for not identifying the subject matter or what was done, using entries such as "legal research," "trial preparation," and "met with client."); *Von Clark v.* Butler, 916 F.2d 255, 259 n.6 (5th Cir. 1990); Wright v. *Blythe-Nelson,* Civ. A. 3:99CV2522-D, 2004 WL 2870082 (N.D. Tex. Dec. 13, 2004); *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:08-CV-1337-B, 2010 WL 3000877, at *4 (N.D. Tex. July 27, 2010)("Court has the discretion to reduce or eliminate those hours" using conclusory phrases).  Moreover, many time entries do not provide sufficient detail for the court to determine if they were reasonable and necessary, e.g., "research and review of cases," "library research," "analyzing documents," "reading background documents," "phone interviews," "revise memorandum," "review documents," and "correspondence," all of which courts have held to be inadequate. *See, e.g., League of United Latin Am. Citizens No. 4552 v. Roscoe*

-42-

*I.S.D.*, 119 F.3d 1228, 1233 (5th Cir. 1997); *Walker*, 99 F.3d at 773; *Louisiana Power*, 50 F.3d at 326. Sanderson Farms notes that Fiddler made duplicative entries on December 2, 2011 ("Draft additional requests" for discovery (#63, Ex. C at 36)) and on May 14, 2013 (to review medical records and conference with paralegal (#63, Ex. C at 56)). Attorneys Fiddler and Reed both billed for attorney conferences on November 16, 2011, October 4, 2011, and July 3, 2013. "The billing judgment rule does not permit the plaintiffs to bill for both attorneys' participation in an attorney-to-attorney conference. *Hilton*, 2009 WL 1750121, at *11. "If there is no evidence of billing judgment, . . . the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'" *Walker v. City of Mesquite, Texas*, 313 F.3d 246, 251 (5th Cir. 2002); *Saizan*, 448 F.3d at 799. Sanderson Farms further urges the Court that because Plaintiff's attorney sued Sanderson Farms three times in the last three years, without specificity in counsel's entries the Court cannot be sure that the fees sought here were necessary and reasonable for the prosecution of this case as opposed to that of the other unsuccessful actions.

Sanderson Farms also complains that most of Plaintiff's entries are block billed, setting out multiple tasks for each period of time billed. For example (#63-1 at 53), on May 6, 2013 Fiddler entered the following for five hours and forty-five

minutes:

> Review medical release authorization; conference with paralegal; review records request; review emails from opposing counsel; begin preparing cross examination of T Ormon; review documents to finish compiling exhibit list; review draft of Trial Memorandum-make revisions; review revisions to JPO, make revisions; email opposing counsel; conference with associate; review, revise and finalize Witness List, Plaintiff's Proposed Jury Instructions, etc[.], Voir Dire, Trial Memorandum, Joint Pretrial Order, email opposing counsel.

The Court cannot determine how much time is reasonable when an entry includes both compensable and non-compensable tasks. For instance, in an entry for 2.6 hours clerical work performed by counsel on August 28, 2010 he stated, "Review TWC-CRD Notice of Right to Sue; research; review, revise and finalize Complaint; e-file complaint." Time spent e-filing the complaint is clerical and cannot be reasonably billed to a client; time spent on "research" without specification should not be included in the lodestar; time spent reviewing and revising the complaint is reasonable and compensable. The block billing, however, prevents the Court from being able to separate the tasks and determine the appropriate reasonable number of hours. The proper remedy for such vague block billing is an across-the-board reduction in the attorney's hours. *Hensley*, 461 U.S. at 433 ("Where documentation of hours is inadequate, the district court may reduce the award accordingly."); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004)("In view of all this inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper

billing entries--we will allow reimbursement for only fifty percent of the attorney hours that Role Models requests."); *SunTrust Mortgage, Inc. v. AIG United Guar. Corp.*, 3:09CV529, 2013 WL 870093 at *14 (E.D. Va. Mar. 7, 2013)(20% time reduction "for block billing and for the inconsistent time descriptions"); *EEOC v. AutoZone Inc.*, CIV. A. 10-11648-WGY, 2013 SL 1277873, at *8 (D. Mass. Mar. 29, 2013)("twenty percent global reduction" to lodestar for block billing).

Sanderson contends that courts regularly reduce compensable hours by 10-15% for a lack of billing judgment.  They also reduce compensable hours by up to 20% when entry descriptions are block billed.  Both circumstances exist here, so Sanderson Farms requests that the Court reduce the number of hours billed by Fiddler and Reed by 20%.

Sanderson Farms also questions whether the work performed by Fiddler's legal assistant, Denise Chatham, was legal or clerical.  The Supreme Court has held that regarding paralegal hours, the court must differentiate between tasks that are usually included in an attorney's hourly rate as overhead and tasks usually billed separately at market rates to a fee-paying client.  *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989)(addressing attorney's fees under fee-shifting 42 U.S.C. § 1988)(reasonable attorney's fee "should compensate the work of paralegals, as well as that of attorneys").  Only tasks of a paralegal billed separately at market

rates to a fee-paying client qualify for inclusion in a fee award, rather than their cost to the attorney. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001)("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."). Thus Chatham's work can be recovered "only to the extent that [she] performs work traditionally done by an attorney. Otherwise [legal assistant] expenses are separately unrecoverable overhead expenses." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). The court in *Au v. Funding Grp., Inc.*, 933 F. Supp. 2d 1264, 1276 (D. Haw. Mar. 21, 2013), compiled a nonexhaustive list of ministerial, non-compensable tasks:

> reviewing Court-generated notices; scheduling dates and deadlines; calendaring dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

Sanderson Farms argues that the vast majority of time entries for Chatham are non-legal, clerical tasks that no fee-paying client would consider appropriate:  references to calendaring deadlines and reminds, Bates stamping documents, communicating with Court staff and vendors (court reporters, etc.), reviewing Court-generated notices and orders, preparing documents for filing/filing documents with the Court, reviewing emails or correspondence without an apparent legal purpose.  Sanderson Farms identifies the

dates of such entries in #63-1, Ex. C.; #67 at p. 22-23 & nn.7-11. Sanderson Farms also charges that Chatham's time entries indicate a lack of billing judgment and most are block billed.  Because courts have held  that the costs of clerical work performed by staff members constitute an "overhead cost" built into the attorney's hourly rates and a separate charge for their staff's clerical time would be an unreasonable double recovery and because the vast majority of her recorded time was spent on clerical tasks, insufficiently described, and/or block billed, Sanderson Farms urges the Court to reduce her time by 75%.

Sanderson Farms further asks the Court to deny counsel's request for conditional fees for possible appeals.  If there should be an appeal and Plaintiff prevails and requests a fee award for services relating to the appeal and the Fifth Circuit agrees, "the Fifth Circuit remands the appropriate fee determination to the district court once the claim for fees is ripe for adjudication." *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 786 (S.D. Tex. 2007).  Any award for appellate fees at this stage would be speculative and likely subject to challenge, thus undermining judicial economy.

In sum, Sanderson Farms urges the Court to reduce counsel's hours by 20% from 214 hours to 171 hours, his hourly rate from $375.00 to $275.00, for a total amount of $47,000, rather than the $80,000 he requested.  Similarly, Andrew Reed's hours by 20%, from

the requested 173 to 138, for a total award of $20,700 instead of
the $26,000 requested.  It asks the court to reduce Chatham's
compensable hours by 75%, from the 192 hours requested to
approximately 48, for a total of $6,000 instead of the $24,000
requested.  Once the totals are added, Sanderson's Farm's proposed
lodestar of $73,7000 rather than the $130,000 requested,[12] it seeks
a 50% reduction for lack of success on all but the FMLA retaliation
claim, for a total attorney fee award of $36,850.

### Plaintiff's Reply (#69)

Insisting that counsel's lodestar calculation is presumptively
reasonable, Plaintiff argues that Defendant's designated expert,
Mark Flora, has not stated in his Declaration that Fiddler's
regular hourly rate of $375.00 is unreasonable, or that the number
of hours spent on the case were unnecessary or excessive, or that
Flora is familiar with the rates in Houston since he is from
Austin, and she asks the Court to strike the Declaration.[13]
Plaintiff continues that because Defendant has not provided any
controverting evidence, the affidavits of Plaintiff's two experts
(Fiddler and Costea, another experienced employment law attorney

---

[12] Carroll objects that she seeks $153,418 in fees as the
lodestar amount and that Sanderson Farms ignores the fees sought
for post-trial motions, already amount to #12,000.  #69 at p.7 &
nn. 16-18.

[13] The Court finds that these reasons do not warrant striking
the declaration.  It is Plaintiff's counsel's burden to prove
that his fees and hours expended are reasonable, not Sanderson
Farms'.

practicing in the Southern District of Texas) that $375.00 per hour is a reasonable rate and lower than the average rate of $388 per hour, should be accepted as true.[14]  Fiddler emphasizes that he is an equity partner in his firm, not an associate.  Carroll insists that Defendant's proposed reduction of fees to 24% of what counsel sought is not supported by the evidence.  Defendant also ignores the more than $23,000 in fees being incurred in post-trial motions when it claims that she is seeking only $130,000 in fees and imposes its reduction on that figure.  Carroll also complains that Sanderson Farms manipulates the amount of damages that she sought in order to create a larger disparity compared with the amount she recovered;  it claims that Carroll sought $474,068.32 in compensatory damages (#67, p.9), as stated in the First Supplemental Initial Disclosures, filed February 17, 2011, when she was at a job earning much less than she made at Sanderson Farms and therefore included $398,199 in potential front pay damages (#17, p.3).  Once she started earning more money, she amended her disclosure to indicate that she was not seeking front pay damages (#46, Plaintiff's Fifth Supplemental Initial Disclosure at p. 3).[15]

---

[14]  This decision is for the Court, not for designated experts, to be determined from the numerous factors discussed above.

[15] The Court observes that #46 was filed on May 2, 2013, when trial was scheduled for May 17, 2013.  (The trial was reset to July to allow the Court to rule on a recently filed motion for summary judgment).  In #46 Plaintiff stated that she was seeking $102,840 in back pay plus $6,340 in lost benefits, and liquidated

Sanderson Farms took Carroll's disclosures that she was seeking $300,000 in compensatory damages and $300,000 in punitive damages for a total of $600,000 when its attorneys knew that the ADA and the TCHRA had caps of $300,000 on what Plaintiff can recover from Sanderson Farms, in compensatory, nonpecuniary, and punitive damages under each statute.  42 U.S.C. § 1981a(b) and Tex. Labor Code § 21.2585(d)(4).  Thus Sanderson erroneously uses the number of $1,074.068.  She also complains that Sanderson Farms' attorney failed to respond to her efforts to settle the case, first for $50,000 and subsequently for $97,500, and now seeks to limit her award.

Carroll argues that the *Johnson* factors do not warrant a downward adjustment here because success at trial is only one factor in deciding if the time spent on the case was necessary. Furthermore, without specifying which, she maintains any downward adjustment is more than offset by factors meriting an upward adjustment.

Carroll contends that the "allegations of vague entries, block

---

damages in an equal amount; non-economic damages in the amount of $300,000; and possibly $300,000 in punitive damages.  While Fiddler charges that Sanderson Farms must have known that these requested amounts for compensatory and punitive damages were not available because of $300,000 statutory caps under § 1981a(b) and Texas Labor Code § 21.2585(d)(4), and that Sanderson Farms was trying to deceptively manipulate Plaintiff, that knowledge (which Fiddler clearly had) apparently did not keep Fiddler from filing a document stating at that late date that Plaintiff was seeking them.

billing, and billing judgment are exaggerated and overblown and
ignore the fact that such issues go to the necessity of the time
spent on the case, a fact on which Defendant has failed to offer
any evidence."[16]  #69 at p.2.  Carroll claims that Sanderson Farms'
objections to the fee award requested for paralegal Chatham are
unsupported by evidence and misstate the nature of the work she
performed.  She also argues that conditional appellate fees should
be awarded now because Sanderson Farm has refused to make a
settlement offer and should be given notice that "if it attempts to
appeal from this clean and fair trial, it will not be able to use
its vast financial resources to grind Plaintiff into submission by
further delaying resolution of the case with a frivolous appeal."
#69 at p.2.  She adds that the appellate fees request is also
"completely unrefuted and uncontroverted and should be awarded,
conditionally, in their entirety."  *Id.*

Regarding Sanderson Farms' reliance on the State Bar of Texas'
"Hourly Rate Fact Sheet," counsel emphasizes that (1) he is double
board certified by the Texas Board of Legal Specialization in Labor
and Employment Law and Civil Trial law, a status shared by only
approximately twenty-five of the 90,000 attorneys in Texas[17]; he has

---

[16] The Court notes, as indicated *supra,* that under the law
the fee applicant bears the burden of showing that his requested
fee award is reasonable.

[17] #63-1. p.1; http://www.texasbar.com/AM/Template.cfmSection
=About Us FAQs#many, visited Aug. 25, 2013.

been selected to the Texas "Super Lawyers" every year since 2007, selected to "Super Lawyers" top 100 attorneys in Houston in 2012, and named to *H Texas Magazine*'s "Top Lawyers" list every year since 2008; and he has served as the Chair of the Houston Bar Association Labor and Employment Section during the 2011-12 term.    An attorney's worth or skill does not depend on the number of attorneys in his firm, he argues.  Moreover Fiddler states that he is an equity partner in his firm, not an associate.

Fiddler summarily contends that he and his staff were precluded from working on other cases by the work on this case.

He also objects to Sanderson Farm's objections to the vagueness of Fiddler's billing entries, even though there is substantial case law supporting Sanderson's arguments.  He charges that Sanderson Farms is impugning the integrity of his firm.  He complains if Sanderson Farm's complaints of double billing, even though the Court notes that it is Fiddler's obligation to identify the billing entries sufficiently that the subject matter can be distinguished.  Fiddler objects to the 75% reduction of Chatham's fees, summarizing the services she performed and her nineteen years of experience as a legal assistant.

Without identifying any of the factors that went into the courts' determination, Fiddler cites a couple of cases giving high fee awards in employment discrimination cases to argue that his request is in line with others and is "in fact quite modest."   #69

-52-

at p. 20.  He further contends that reducing his fee award by over 75% would have a severe chilling effect on attorneys' taking civil rights cases on a contingency fee.

### Court's Decision

As noted, as a matter of law the most important factor in an award of attorney's fees is the degree of success.  Initially in Carroll's complaint filed on August 28, 2010 and her First Amended Complaint (#3) filed a few day later, Plaintiff sued Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division), Sanderson Farms, Inc. (Processing Division) and Sanderson Farms, Inc. (Food Division) for (1) violations of the FMLA, i.e., interfering with her rights under the statute, and retaliating against her by failing to restore her to the same job she had before taking leave, terminating her, and interfering with her attempts to find a new job after termination; (2) violation of the Americans with Disability Act, i.e., discriminating against her by terminating her because of her knee problems (disability, "regarded as" disability, and/or record of disability); (3) violations of the Texas Commission on Human Rights Act because of her disability, "regarded as" disability, and/or record of disability; (4) defamation after her termination in preventing her from obtaining other employment; and (5) tortious interference with prospective contract/employment and/or business relations after her termination.  #1, Complaint.

Counsel did not drop Plaintiff's claims against Defendants

Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division) and Sanderson Farms, Inc. (Food Division), which were not her employers, until the morning of the first day of trial, July 12, 2013, almost three years after filing his suit, and then without explanation or excuse for his lengthy delay. His conduct hardly constitutes efficient processing of this litigation. Moreover, the only one of Plaintiff's claims that survived to go to trial and on which Plaintiff prevailed was her claim of retaliation for taking FMLA leave under the FMLA, ADA, and TCHRA against Sanderson Farms, Inc. (Processing Division).

Several of Carroll's claims failed as a matter of law because they are not legally cognizable or because Plaintiff failed to present sufficient evidence to raise genuine issues of fact about them on summary judgment. These claims are not based on the same facts or legal theories, i.e., are not inextricably related, to the claim on which she prevailed.

First, in the Court's lengthy November 5, 2012 Opinion and Order of Partial Summary Judgment (#42), it determined as a matter of law that under the federal statutes Plaintiff's post-termination retaliation claim that Ormon refused to give her a reference for prospective employment, specifically with the City of Houston, failed as a matter of law because she did not timely exhaust her administrative remedies as to that claim. #42 at pp. 55-56.

The Court further concluded that Carroll's FMLA claim that she

was not restored to the same job or an equivalent position in violation of 29 U.S.C. § 2614 after returning from leave failed because she was discharged immediately upon her return.  #42 at pp. 54-55.

As discussed #42 at pp. 49-51, Plaintiff has not and could not state or could not avoid summary judgment on Texas common-law claims for defamation and tortious interference on the grounds that Sanderson Farms (and/or Todd Orman) refused to provide a reference to a prospective employer or that Sanderson Farms (and/or Todd Orman) gave a negative reference.  Under Texas law a former employer is not required to provide job-related information to a prospective employer, but if he does, he has immunity from civil liability unless the former employee shows with clear and convincing evidence that the former employer provided information about a former employee that the employer knew was false or made with malice and reckless disregard for the truth.  Carroll failed to make such a showing in response to Defendant's motion for summary judgment.  Counsel's conclusory statement that "[t]ime spent on pleading and motion matters pertaining strictly to non-FMLA and related causes of action and any work relating exclusively to defamation, tortious interference, and/or to the dismissed defendants is essentially de minimis and is more than offset by the time I and my staff worked on the case and never billed," is an ineffectual and futile effort to conceal the fact that it is his

burden to expressly exercise billing judgment in written records , which, as Sanderson Farms points out, he has completely failed to satisfy.   Nor are these Texas state-law claims in any way intertwined with the legal theories and facts of the federal statutory discrimination claims.

Based on Plaintiff's failure to prevail on these claims the Court finds that counsel's fee award shall be reduced by 20%.

The Court disagrees with counsel's assertion that this case required "more skill than the ordinary wrongful discharge case" because of "the intricacies of employment discrimination law, including . . . *Nassar*."   This Court has addressed the inapplicability of *Nassar* to this case at length in footnote 8, and finds that counsel, as an attorney specializing in employment law and requesting as substantial a fee, should have known it. Moreover, the Court finds that this case was clearly not complicated or novel, nor was the applicable law complex, but the issues were essentially questions of credibility.

Although counsel argues that Carroll's claims of disability discrimination based on her knee problems under the FMLA, the ADA, and the ADA were intertwined and based on a common core of fact, he did not have to spend significant time on briefing that issue because Sanderson Farms did not argue that the condition of her knee failed to satisfy the requirements for a disability under the FMLA, ADA, and TCHRA, nor did it deny Carroll FMLA leave based on

that injury.

The Court next addresses whether counsel's requested hourly fee of $375, plus lesser sums for his associate and legal assistant's services, for the hours the three expended, plus an estimated $23,375 more for services since his filed his application, for total of $153,418, were reasonable; as noted, Plaintiff's attorney bears the burden of showing that the hours billed are reasonable. *Hensley*, 461 U.S. at 427; *Saizan*, 448 F.3d at 799. With regard to hourly fees in the community for services rendered by attorneys of comparable skill, experience and reputation, the Court agrees with Sanderson Farms that Fiddler's request is high for a firm the size of his and that the State Bar of Texas' Hourly Rate Fact Sheet" is a more specific measure of fees for employment law legal specialists in the Houston area than is the very general *Texas Lawyer* survey.

While he claims his expertise and achievements warrant the higher fee, this Court did not find that the quality of his performance throughout the trial supports so high a fee. That Carroll, who in essence was the head Human Resource person at Sanderson Farms' Waco plant, was awarded only $25,000 (when Plaintiff sought at trial for over $100,000) in back pay for what the jury found was a retaliatory discharge reflects, at least in part, that counsel was not very effective.

-57-

Moreover, as noted, usually the fee applicant establishes a community's reasonable rate through the affidavits of other attorneys practicing there.  Mr. Fiddler submitted two affidavits: one is his own, self-serving affidavit; the other from Peter Costea, who the record shows graduated from the same law school in the class as Mr. Fiddler and who public records show over the years has worked with Mr. Fiddler.  *See, e.g., Persons v. Jack in the Box, Inc.*, Civ. A. H-03-4501, 2006 WL 846356, (S.D. Tex. Mar. 31, 2006).  The Court cannot accord these affidavits as much weight as it would to independent, objective attorney's affidavits.

Furthermore, a review of the invoices submitted by counsel ((#63-1, Ex. C) demonstrates that counsel has completely failed to demonstrate that he exercised billing judgment.  Furthermore the majority of his entries are vague, failing to identify the nature and subject matter of the work, therefore preventing the Court from determining whether the hours were reasonably expended on the claims on which Carroll prevailed.  The Court agrees with Sanderson Farms that it is unclear whether Chatham's fees are for clerical work or legal work.

In addition, regarding the eighth *Johnson* factor, the amount requested for fees is substantially out of proportion to the amount of damages sought for two and a half years, up to the eve of the trial setting at that time, i.e., May 17, 2013.  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (1998).  In her Initial

-58-

Disclosure (#14 at p.3), filed November 11, 2010,  Carroll sought
Back Pay Damages in the amount of #64,790.24, and Front Pay Damages
in the amount of $398,199.00.  In her First Supplemental Initial
Disclosures (#17 at p. 3), filed February 17, 2011 she sought back
pay of $75,869.32 and front pay in the amount of $398,199.00.  She
did not abandon her claim until May 2, 2013.  See footnote 15.
While Fiddler accuses Sanderson Farm of manipulative tactics, it
appears to the Court that the shoe fits his own foot.

Although beyond the $130,043 requested for work up to filing
of his fee application, Fiddler requests an additional, but
speculative, $23,375 in fees for subsequent work after, he has not
submitted any additional time records or other documentation to
support his request.

Because an award under the FMLA is only for a prevailing party
and the Court cannot know if Plaintiff will prevail above and
because the request for conditional appellate attorney fees is
merely a speculative dollar figure without any information by which
the Court could determine whether the amount requested is
reasonable, the Court denies counsel's request for such an award
without prejudice.  *Preston Exploration Co., L.P. v. GSP, LLC*, No.
Civ. A. H-08-3341, 2013 WL 3229678, at *12 (S.D. Tex. June 25,
2013); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 814 (W.D.
Tex. 2006).  Plaintiff can apply to the Fifth Circuit for such a
fee award if and when appropriate.  *Gagnon*, 607 F.3d at 1045.

Based on all these deficiencies, the Court finds that Plaintiff's fee request should be reduced by another 30%, for a total reduction of the fee award by 50%. Thus the Court awards $76,709.00 in fees to Plaintiff.

Because Plaintiff has not yet moved for costs, the Court does not award them here, and counsel may seek them after entry of judgment.

Accordingly, the Court

ORDERS that Plaintiff's motion for judgment (#62) is GRANTED as to compensatory and liquidated damages and prejudgment and post-judgment interest, as indicated. Plaintiff's application for attorney's fees (#63) is GRANTED IN PART as explained in this order. Final judgment shall issue by separate instrument.

**SIGNED** at Houston, Texas, this  11th  day of  February , 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE